UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHAEL WRIGHT WINSOR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SEQUOIA BENEFITS & INSURANCE SERVICES LLC, et al.,<br><br>Defendants. | Case No. 21-cv-00227-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 35 |

Plaintiffs, current and former participants in RingCentral, Inc.'s Welfare Benefits Plan, allege that Sequoia Benefits and Insurance Services LLC and Gregory S. Golub engaged in an unlawful kickback scheme as fiduciaries of RingCentral's Welfare Benefits Plan.[1] Before the Court is Defendants' motion to dismiss. (Dkt. No. 35.)[2] After carefully considering the parties' briefing, and having had the benefit of oral argument on May 28, 2021, the Court GRANTS Defendants' motion. Plaintiffs have not met their burden of proving that they have Article III standing to pursue their claims.

**DISCUSSION**

"Standing is a necessary element of federal-court jurisdiction" and a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Article III standing consists of three "irreducible constitutional minimum" requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5 & 26.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers placed at the top of the documents.

favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). These elements are often referred to as injury in fact, causation, and redressability. *See, e.g.*, *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). Plaintiffs, invoking federal jurisdiction, bear the burden of establishing the existence of Article III standing and, at the pleading stage, "must clearly [] allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547 (internal quotation marks and citation omitted); *see also Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983) ("The facts to show standing must be clearly apparent on the face of the complaint.").

An injury in fact is "an invasion of a legally protected interest" that is (1) "concrete," (2) "particularized," and (3) "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To be "particularized," an injury "must affect the plaintiff in a personal and individual way," while "concreteness" requires an injury to be "'de facto'; that is, it must actually exist." *Id.* at 1548 (internal citation omitted). The requirement that an injury be "actual or imminent" "ensure[s] that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Further, there must be a sufficient "causal connection between the injury and the conduct complained of." *United States v. Hays*, 515 U.S. 737, 743 (1995). Standing theories that depend on a "speculative chain of possibilities"—such as those that turn on "the decisions of independent actors"—lack the necessary causal connection. *Clapper*, 568 U.S. at 414; *see also Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 447 (9th Cir. 1994) ("[W]hen standing hinges on choices made by a third party, plaintiff must "adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.") (quoting *Lujan*, 504 U.S. at 562).

Plaintiffs allege that Defendants' receipt of commissions from the contracting insurers injured them in two ways. First, they allege that they make contributions from their pay for their medical, vision, dental and life insurance and that their "contributions would be less if not for Defendants' violations of ERISA." (Dkt. No. 1 at ¶¶ 10-11.) Second, they allege that the excessive insurance charges for which Defendants are responsible caused RingCentral to "exhaust

funds that would otherwise be available for employee benefits and compensations." (*Id.*)

As for the first theory, Plaintiffs' opposition cites their Complaint, ¶¶ 61, 65, for the proposition that Defendants "pass the results of their malfeasance on to all who contribute, and then lock-in the injury when they retain unlawful commissions instead of rebating them." (Dkt. No. 46 at 24.) No facts are alleged in those paragraphs, however, that support a plausible inference that if Defendants had not charged the insurers a commission (1) the insurers would have charged the RingCentral Plan less, or (2) even if the insurers would have charged RingCentral less for the coverage, RingCentral would have reduced the amount of their employees' required contributions. Indeed, the Complaint does not even hint at how Plaintiffs' contributions to their benefits are determined. At most, Plaintiffs allege that Defendants required RingCentral to pay at least 75% of required contributions for single coverage and 50% of coverage for family coverage. (Dkt. No. 1 at ¶17.) But that is a floor; Plaintiffs do not allege that either was required to pay the maximum allowed, that is, 25% of the contribution amount. Without any allegations as to how RingCentral determined Plaintiffs' contributions for their benefits there are not facts alleged that plausibly suggest that had the amounts RingCentral was required to pay been lower it would have asked its employees to pay less.

The sole case Plaintiffs cite in support of their alleged concrete injury illustrates the inadequacy of Plaintiffs' allegations. In *Cen. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181 (2d Cir. 2005), the Second Circuit held that there were serious questions whether the drug plan participants—as opposed to the drug plan itself—had suffered any injury due to alleged inflated prices for prescription drugs because the plan participants generally pay a flat co-pay regardless of the cost of the drug. *Id.* at 202. The court also suggested that those plan participants who pay a percentage of drug cost as their co-pay might have suffered an injury. *Id.* Because the record was unclear whether any plaintiffs had standing, the court reversed and remanded to the district court to determine the jurisdictional standing question. Here, Plaintiffs have not alleged *any* facts as to how their premium payments are calculated. Is it a flat amount? Is it a percentage? Is it zero? Nothing is alleged. They have not met their burden of proving a concrete and particularized injury to themselves. *See Thole v.*

1  *U.S. Bank N.A.,* 140 S.Ct. 1615, 1620-21 (2020).

At oral argument Plaintiffs insisted that they have nonetheless met their burden of proving injury because under United States Department of Labor Technical Release 2011-04 any monies Defendants are required to return to the RingCentral plan will have to be shared with RingCentral's participating employees.  Plaintiffs do not address the legal effect, if any, of the Technical Release, but, putting that omission aside, the Technical Release gives guidance regarding rebates paid pursuant to section 2718 of the Public Health Services Act.  Again, nothing is alleged in the Complaint or in Plaintiffs' opposition that suggests the relief they seek here would constitute a rebate under the Public Health Services Act.  Plaintiffs have not met their burden of proving injury under this first theory.

There are also no facts alleged in the complaint that support the second apparent theory: that monies not paid in commission would have provided more employee benefits.  Indeed, in their opposition Plaintiffs do not even mention this theory.  It, too, fails.

**CONCLUSION**

Plaintiffs' Complaint does not clearly allege facts that satisfy even the first element of Article III standing.  The Complaint is therefore dismissed with 30 days leave to amend.  If Plaintiffs chose to amend their complaint, they should consider Defendants' other arguments made in their motion to dismiss as Plaintiffs are now on notice of those alleged inadequacies and should attempt to cure them in an amended complaint if they can do so in good faith.  The Court also notes that Plaintiffs' and Defendants' use of footnotes in their briefs was excessive, made the briefs hard to read, and violated the spirit, if not the law, of the Local Rule regarding brief length.

This Order disposes of Docket No. 35.

**IT IS SO ORDERED.**

Dated: June 1, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge