UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHAEL WRIGHT WINSOR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SEQUOIA BENEFITS & INSURANCE SERVICES LLC, et al.,<br><br>Defendants. | Case No. 21-cv-00227-JSC<br><br>**ORDER RE: MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 60 |

Plaintiffs, current and former participants in RingCentral, Inc.'s Welfare Benefits Plan, allege that Defendants engaged in an unlawful kickback scheme as fiduciaries of the Plan.[1] The Court previously dismissed Plaintiffs' complaint for lack of Article III standing, granting leave to amend. (Dkt. No. 54.)[2] Defendants now move to dismiss Plaintiffs' amended complaint, (Dkt. No. 55), on the grounds that it fails to establish standing or, in the alternative, fails to plausibly allege that Defendants were fiduciaries. (Dkt. No. 60.) After carefully considering the parties' briefing, and having had the benefit of oral argument on October 28, 2021, the Court GRANTS the motion.[3]

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5, 26.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[3] The Court likewise GRANTS Defendants' request for judicial notice as to documents related to the Welfare Benefits Plan. (Dkt. Nos. 61, 60-1.) "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). "Although mere mention of the existence of a document is insufficient to incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint." *Tunac v. United States*, 897

# DISCUSSION

"Standing is a necessary element of federal-court jurisdiction" and a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "[A] plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). These elements are often referred to as injury in fact, causation, and redressability. *See, e.g.*, *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). Plaintiffs, invoking federal jurisdiction, bear the burden of establishing the existence of Article III standing and, at the pleading stage, "must clearly [] allege facts demonstrating each element." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks and citation omitted).

Plaintiffs' amended complaint alleges that Defendants violated ERISA by accepting commissions from insurers that they did not return to the Plan, and by failing to negotiate lower administrative fees. (*See* Dkt. No. 62 at 13.) They argue both have caused Plaintiffs injury in fact and that they establish the other elements of standing. (*Id.* at 18–24.)

## I. Injury In Fact

Injury in fact is "an invasion of a legally protected interest" that is (1) "concrete," (2) "particularized," and (3) "actual or imminent, not conjectural or hypothetical." *Spokeo v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted). A concrete injury may be financial or non-financial, tangible or intangible, but it must be "real, and not abstract"; "it must actually exist." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *Spokeo*, 136 S. Ct. at 1548.

### A. Commissions

#### 1. Financial

As to unlawful commissions, Plaintiffs first argue the financial injury of "non-

---

F.3d 1197, 1207 n.8 (9th Cir. 2018) (internal quotation marks and citation omitted). The Plan documents are integral to Plaintiffs' complaint and Plaintiffs have made no objection.

2

1    reimbursement of Defendants' commissions." (Dkt. No. 62 at 18.) According to the amended
2    complaint, Plaintiffs Nicole Beichle and Rachael Wright Winsor made twice monthly
3    contributions for insurance in amounts between $0.22 and $105.16. (Dkt. No. 55 ¶¶ 11–14, 17–
4    18.) Defendants then earned a 6% commission from insurer Anthem, such that Ms. Beichle's
5    contributions "funded $91.08 of Defendants' Anthem commission in 2018-2019" and Ms.
6    Winsor's contributions "funded $151.43 of Defendants' Anthem commission in 2017." (*Id.* ¶¶
7    20–21.)

8          Plaintiffs allege Defendants did not return those commissions to the Plan, in violation of
9    ERISA. (*Id*. ¶¶ 20, 80.) This allegation, however, does not plausibly support an inference that
10   Plaintiffs—as opposed to the Plan—suffered an injury in fact because Plaintiffs have not alleged
11   facts that support an inference that reimbursement to the Plan would concretely affect them one
12   way or another. *See Thole v. U. S. Bank N.A.*, 140 S. Ct. 1615, 1618–19 (2020) (holding that
13   ERISA plan participants did not have standing to challenge fiduciaries' mismanagement of plan
14   assets where the amount of benefits they received and would receive in the future was not
15   impacted by the alleged mismanagement); *Glanton ex rel. ALCOA Prescription Drug Plan v.*
16   *AdvancePCS Inc.*, 465 F.3d 1123, 1124–25 (9th Cir. 2006) (finding no standing where plaintiffs
17   claimed defendants overcharged the plans, but did not allege they were denied benefits or show
18   that "any one-time award to the plans [would] inure to the benefit of participants" as individuals).
19   *Cf. Evans v. Akers*, 534 F.3d 65, 71 (1st Cir. 2008) (finding standing where plaintiffs alleged "that
20   fiduciary breaches by the defendants diminished the value of their [retirement] accounts, such that
21   they received less money on the day they cashed out of the Plan than they would have received in
22   the absence of any fiduciary breach"). As with the original complaint, there are no allegations that
23   support an inference that had Defendants not charged commissions to the insurers, or had they
24   charged a lower commission, Plaintiffs would have contributed less toward their health benefits.

25         Plaintiffs' insistence that, if they prevail, Defendants will have to pay the commissions
26   received to the Plan and the Plan in turn will distribute the commissions to plan participants on a
27   pro rata basis is unpersuasive. First, Plaintiffs' contention that the availability of a remedy in the
28   absence of any concrete harm in the first place creates Article III standing is inconsistent with

3

recent Supreme Court standing rulings.  In *TransUnion LLC v. Ramirez*, the Fair Credit Reporting Act gave the plaintiffs a statutory damages remedy, yet the Supreme Court held that certain plaintiffs had not suffered a concrete injury in the first place and therefore did not have Article III standing.  141 S. Ct. 2190, 2208–13 (2021).

Second, Plaintiffs do not cite any law that supports the conclusion that the Plan will distribute any portion of any recovered commissions to plan beneficiaries.  *Evans v. Akers*, 534 F.3d 65 (1st Cir. 2008), is inapposite.  There, the plan participants alleged an injury in fact: the fiduciaries' mismanagement diminished the monies in their personal accounts such that when they received lump sum distributions, they received less than they otherwise would have received but for the breach.  *Id.* at 67–68, 71.  Further, the portion of the opinion upon which Plaintiffs rely stated that "recovery made on behalf of a defined contribution plan must be allocated to the individual accounts injured by the breach." *Id.* at 74.  Plaintiffs do not and cannot allege that the Plan at issue here is a similar defined contribution plan.

### 2. Non-financial

Plaintiffs next argue they have a non-financial stake in the commissions.  "Plaintiffs have an interest in restoring misdirected funds to their plan and preventing Defendants from improperly profiteering—whether Plaintiffs receive a financial payout or not."  (Dkt. No. 62 at 22.)  Plaintiffs argue that the injury to their interest in preventing unlawful profiteering has a close relationship to the traditional rights and remedies of trust law.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. at 2204 ("Various intangible harms can also be concrete.  Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." (citations omitted)).  According to Plaintiffs, American courts traditionally recognized suits by "any person with a beneficial interest, present or future, vested or contingent in the trust whose rights are or *may* be adversely affected." (Dkt. No. 62 at 17 (internal quotation marks and citation omitted).)  A beneficiary "could sue to enjoin or redress a breach of trust or otherwise enforce the trust," even without a financial injury.  (*Id.*)

The Supreme Court's decision in *Thole* defeats Plaintiffs' trust analogy.  There, just as here, the plaintiffs argued that

4

> an ERISA defined-benefit plan participant possesses an equitable or property interest in the plan, meaning in essence that injuries to the plan are by definition injuries to the plan participants. [The Plaintiffs] contend, in other words, that a plan fiduciary's breach of a trust-law duty of prudence or duty of loyalty itself harms ERISA defined-benefit plan participants, even if the participants themselves have not suffered (and will not suffer) any monetary losses.

*Thole v. U. S. Bank N.A.*, 140 S. Ct. 1615, 1619 (2020). The Supreme Court rejected this argument:

> The basic flaw in the plaintiffs' trust-based theory of standing is that the participants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust or to the participants in a defined-contribution plan. In the private trust context, the value of the trust property and the ultimate amount of money received by the beneficiaries will typically depend on how well the trust is managed, so every penny of gain or loss is at the beneficiaries' risk. By contrast, a defined-benefit plan is more in the nature of a contract. The plan participants' benefits are fixed and will not change, regardless of how well or poorly the plan is managed. The benefits paid to the participants in a defined-benefit plan are not tied to the value of the plan. Moreover, the employer, not plan participants, receives any surplus left over after all of the benefits are paid; the employer, not plan participants, is on the hook for plan shortfalls. As this Court has stated before, plan participants possess no equitable or property interest in the plan. ***The trust-law analogy therefore does not fit this case and does not support Article III standing for plaintiffs who allege mismanagement of a defined-benefit plan.***

*Id.* at 1619–20 (citations omitted and emphasis added). The Plan at issue here is a defined benefit plan. Trust law therefore does not help Plaintiffs prove their Article III standing.

At oral argument, Plaintiffs attempted to distinguish *Thole* on the basis that the plan in that case was entirely funded by employer contributions. Even assuming that is true, *Thole's* analysis distinguished between defined benefit and defined contribution plans, not between employer- and employee-funded contributions. *See* 140 S. Ct. at 1618. *Thole* stated:

> Of decisive importance to this case, the plaintiffs' retirement plan is a defined-benefit plan, not a defined-contribution plan. In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions. By contrast, in a defined-contribution plan, such as a 401(k) plan, the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions.

*Id.* There is nothing in *Thole* that suggests that the Supreme Court would have found Article III

5

standing if the plaintiffs in that case made some contributions toward their benefits. Instead, what was "decisive" was that the plan was "a defined-benefit plan, not a defined-contribution plan." *Id.* It is similarly decisive here that the plan is a defined-benefit plan.

The Court is also unpersuaded by the Fourth Circuit's decision in *Peters v. Aetna Inc.* 2 F.4th 199, 217–21 (4th Cir. 2021). In *Peters*, the plaintiff challenged the ERISA fiduciaries' undisclosed administrative charge to plan participants and their employer. The court concluded that the plaintiff had sufficiently alleged that the defendants' conduct caused her financial injury and therefore she had Article III standing. However, the *Peters* court went on to hold that, "[e]ven if [the plaintiff] failed to demonstrate a financial injury for standing purposes as to the restitution claim, her allegations revolving around breach of fiduciary duty would separately provide her standing to pursue claims for surcharge, disgorgement, and declaratory and injunctive relief." *Id.* at 219. In so doing, the court relied on Fourth Circuit precedents "explain[ing] that Article III standing for a disgorgement claim under ERISA" does not require "a financial loss," but instead "revolves around whether a plaintiff's 'legally protected interest' has been harmed." *Id.* at 219–20 (quoting *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 366 (4th Cir. 2015)). The court "reasoned that this precept was fundamental in the disgorgement context because requiring a financial loss for disgorgement claims would effectively ensure that wrongdoers could profit from their unlawful acts as long as the wronged party suffers no financial loss." *Id.* The same reasoning applied to surcharge and declaratory and injunctive relief. *Id.* at 220–21.

*Peters*' reasoning fails to persuade. The court did not cite, let alone address, *Thole*, decided the previous year. *Thole*, like *Peters*, involved a claim under ERISA Section 502. Yet the Supreme Court held that because the plaintiffs had not themselves alleged an injury in fact, they did not have Article III standing. Further, the Supreme Court specifically rejected the argument posited by the Fourth Circuit that if plan participants do not have standing, there will no enforcement of ERISA in these situations. 140 S. Ct. at 1621. Moreover, just days after the Fourth Circuit decided *Peters*, the Supreme Court decided *TransUnion*, in which it emphasized that a statutory violation does not create a concrete injury in fact. 141 S. Ct. at 2206 ("An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any

harm to herself but instead is merely seeking to ensure a defendant's compliance with regulatory law . . . .  Those are not grounds for Article III standing." (internal quotation marks and citations omitted)).  While an injury need not be financial to be concrete, it must consist of more than a statutory violation.  *Id.* at 2205 ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . ."); *see also Spokeo*, 136 S. Ct. at 1540 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Nor does *Amalgamated Clothing & Textile Workers Union v. Murdock* support Plaintiffs here.  861 F.2d 1406, 1409–19 & n.6 (9th Cir. 1988).  *Murdock* analyzed only statutory standing—that is, whether ERISA Section 502(a) authorized the plaintiffs to sue.  *See also Vaughn v. Bay Env. Mgmt., Inc.*, 567 F.3d 1021, 1025–30 (9th Cir. 2009) (analyzing only statutory standing).  But Article III standing is a distinct requirement, and it comes first.  *TransUnion*, 141 S. Ct. at 2205 ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . .").  Plaintiffs do not identify a *concrete* non-financial interest in Defendants' commissions.  Their interest in preventing Defendants from enjoying ill-gotten profits is not an injury in fact, but rather an effort to "ensure a defendant's compliance with regulatory law."  *Id.* at 2206.

### B. Insurance Provider Administrative Fees

As to insurance provider administrative fees, Plaintiffs argue financial injury: "Plaintiffs' contributions were higher because Defendants failed to negotiate the embedded administrative fees in the interest of participants."  (Dkt. No. 62 at 24.)  Higher contributions could be an injury in fact.  But, like the original complaint, Plaintiffs' amended complaint does not allege facts that plausibly support an inference that if Defendants had negotiated lower fees, Plaintiffs would have paid lower contributions.  (*See* Dkt. No. 54 at 3–4.)  According to the amended complaint, RingCentral "did not identify a specific formula or set of factors for determining" employees' share of the insurance contributions.  (Dkt. No. 55 ¶ 15.)  "RingCentral cited 'various factors and discussion' and stated that '[t]he company contributes 80-90% of the cost for employee medical

7

benefits." (*Id.*) Thus, the amended complaint supports an inference that RingCentral had discretion in setting employee contributions; it does not plausibly support an inference that if Defendants had negotiated lower fees, RingCentral would have passed on those savings to its employees by reducing their contributions. As such, Plaintiffs have alleged no injury in fact as a result of Defendants' failure to negotiate lower administrative fees. *Cf. TransUnion*, 141 S. Ct. at 2210 ("The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm.").

## II.     Redressability

Although Plaintiffs fail to establish the injury in fact requirement of standing, redressability is also lacking for related reasons. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("[A] plaintiff must show . . . that the injury would likely be redressed by judicial relief."). Plaintiffs assert in their opposition and reiterated at oral argument that, if they prevail, Defendants might be required to return monies to the Plan or directly to Plaintiffs. But, even if monies returned to the Plan, there are no facts alleged in the amended complaint, or law cited in Plaintiffs' opposition, that suggests that Plaintiffs themselves would receive anything. Nothing in the Plan documents would force the Plan to route funds to Plaintiffs, and nothing in RingCentral's policies would force RingCentral to lower Plaintiffs' contributions. *See Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) ("There is no redressability, and thus no standing, where . . . any prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or to predict." (internal quotation marks and citation omitted)).

## CONCLUSION

The amended complaint does not establish that Plaintiffs suffered an injury in fact that would be redressable by judicial relief. Accordingly, Plaintiffs lack Article III standing. The Court need not reach Defendants' alternative argument, under Rule 12(b)(6), that Plaintiffs do not plausibly allege Defendants are fiduciaries.

Defendants' motion to dismiss is GRANTED without prejudice. *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). Because the deficiency as to Article III

8

standing could not be cured by amendment, the dismissal is without leave to amend.

This Order disposes of Docket No. 60.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 1, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge